## Martin v. Commonwealth.

(Decided June 21, 1918.)

### Appeal from Fayette Circuit Court.

1. Taxation—Delinquent Taxes—Equitable Action to Recover—Attachment.—On a return of "no property found" on a tax warrant issued for delinquent taxes the sheriff may, by virtue of section 4169 of the Kentucky Statutes, institute an equitable action in the name of the Commonwealth in any court of competent jurisdiction to subject the choses in action or other equitable estate of the delinquent to the payment of the taxes; and in such an action attachment may issue and other proceedings be taken as are authorized on a return of "no property found" on an execution in favor of an individual.

2. Taxation—Shares of Corporate Stock—Assessment.—Where a stockholder owning all the shares of a corporation appropriated all the assets of the corporation to his own use, without paying the corporation anything therefor, he will be required to return the property so received by him or its value to the extent that may be necessary for the payment of taxes due upon the property of the corporation, and a personal judgment therefor may be taken against him.

HUNT & BUSH for appellant.

GEORGE C. WEBB and HOGAN YANCY for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This action was instituted in the Fayette circuit court by the sheriff of Fayette county on behalf of that county and the Commonwealth against E. L. Martin and others for the purpose of collecting $671.13, taxes for the year 1915, upon personal property of the assessed value of $60,300.00, which belonged to a corporation known as Curry, Brown & Snyder.

The petition shows that the personal property of Curry, Brown & Snyder consisted of accounts assessed

at $23,400.00; four wagon horses assessed at $250.00; an automobile assessed at $450.00; store fixtures assessed at $600.00, and a stock of goods assessed at $35,600.00. Martin, the Curry, Brown & Snyder corporation, and Brown and Snyder, were made defendants to the action, but we are now only concerned with the appeal of E. L. Martin.

The petition, as amended, alleged that Curry, Brown & Snyder owned personal property of the assessed value of $60,300.00, which was listed for taxation for 1915; that all the preliminary steps that were necessary to the imposition of a valid tax upon the property were taken, specifically narrating them; that the tax was duly assessed and became a lien upon the property; that Martin was a stockholder in the company; that on February 8th, 1916, he bought all the capital stock of the Curry, Brown & Snyder corporation, and took over and converted to his own use all the assets of that corporation, amounting to $60,300.00; that he knew the taxes had not been paid when he bought the property, and that there was a lien upon the property thus appropriated by him; that he really owned all of the 750 shares of the stock of the corporation and held 744 shares in his own name, and had placed three of the remaining six shares in the name of Allie J. Martin and J. W. Parrish respectively; that Martin refused to elect any officers of the company; and that he did these things for the purpose of avoiding the payment of the debts of the company.

Martin filed a general demurrer and also a special demurrer raising the question of the court's jurisdiction of the subject-matter of the action. Both demurrers were overruled, and Martin, having declined to further plead, the court entered a judgment giving plaintiff a lien upon all of the personal property that had been transferred to Martin and was still held by him; and it also gave plaintiff a personal judgment against Martin for the amount of the tax. From that judgment Martin prosecutes this appeal.

It is first insisted by Martin that the sheriff was without authority to maintain this action and that his special demurrer to the petition should have been sustained. In answer to this contention, however, appellee relies upon section 4169 of the Kentucky Statutes, which provides, in part, as follows:

"On the return of 'no property found' on an execution issued upon a judgment in favor of the Common-

wealth, the Auditor of Public Accounts may cause equitable proceedings to be instituted in the Franklin circuit court, or any other court of competent jurisdiction, as he may elect, in the name of the Commonwealth, and the choses in action or other equitable estate of the delinquent shall be subjected to the payment of the amount due on any such execution. On the return of 'no property found' on any tax warrant issued on the delinquent list filed by any sheriff, such sheriff may institute a like suit in the name of the Commonwealth in any court of competent jurisdiction, and the choses in action or other equitable estate of the delinquent may be collected or be subjected to the amount due on any such warrant; in such proceedings attachment may issue and other proceedings taken as are authorized on the return of 'no property found' on an execution in favor of individuals."

It is conceded that this statute, if in force, is express authority for this action. Appellant insists, however, that the action under this section can be brought only where there has been a return of "no property found" on a tax warrant issued on the delinquent list filed with the sheriff pursuant to section 22 of article 8 of the Act of 1906 (Acts 1906, p. 88); and that this provision of the Act of 1906 was repealed by the Act of 1908, thus leaving no provision for the issuing of a tax warrant which is the basis of an action of this character.

But in this respect we think the appellant is in error. The Act of 1906 was an entire revision of the tax laws of the state. It was long and complicated. Article 8 related to the collection of taxes, and, while it is true that sections 21, 22, 23 and 24 of that article were repealed by chapter 43 of the Acts of 1908, that is not the whole story. Section 22, which was thus repealed, directed the clerk to issue a warrant against the delinquent taxpayer upon the sheriff's certificate to the clerk of the delinquency, and directed the sheriff to collect the tax. But section 26 of the Act of 1906 was amended and is section 4149 of the present Kentucky Statutes. That section provides that when the taxpayer becomes delinquent the sheriff shall distrain sufficient personal property of the delinquent to satisfy the taxes, interest and penalties, and if no sufficient personal property be found he shall levy upon the delinquent's real estate.

The only difference between the Act of 1906 and the Act of 1908, as embodied in section 4149, *supra,* is that

under the Act of 1906, when the taxpayer became delinquent the sheriff was required to report it to the clerk and the clerk would then report it back to the sheriff, and the sheriff could then levy a warrant upon the property and sell it. But under the present law when the taxpayer becomes delinquent the sheriff is authorized, at once, to levy a distress warrant upon the personal property of the taxpayer, without the needless delay and expense of making a return to the clerk and having the clerk to report back to the sheriff before the tax warrant can be issued.

And, although section 27 of the Act of 1906 directing the tax warrant to be returned within sixty days was repealed by the Act of 1908, it still remains the duty of the sheriff to return the tax warrant under the general law regulating the return of writs. So, if the sheriff fails to find either personal or real property sufficient to satisfy the warrant, or none, he must return the warrant accordingly.

But if there should be no tangible property belonging to the taxpayer, or property the legal title to which was in the taxpayer, then the tax could not be collected unless some further provision was made. To meet this situation section 4169, *supra*, was passed as a part of the Act of 1906. It still remains the law, and when it declares that an equitable action may be brought to collect a tax whenever a tax warrant is returned "no property found," it manifestly refers to the tax warrant mentioned in section 4149. The petition in the present case alleges that the tax warrant was issued and returned "no property found," thus bringing the case within the terms of the statute. It follows, therefore, that the special demurrer to the petition, as amended, was properly overruled.

2. The remaining question is this: Did the court err in giving a personal judgment against Martin?

In some jurisdictions a tax has been held to be a debt. Mayor v. McKee, 2 Yerg. 167; San Francisco Gas Co. v. Brickwedel, 62 Cal. 641; City of Dubuque v. I. C. R. R. Co., 39 Iowa 56. But the better opinion is that a tax is not a debt in the ordinary sense of that term. Notes in 8 Am. St. Rep. 507 and 42 Am. S. R. 655. It possesses, in some respects, higher attributes. In Newport & Cincinnati Bridge Co. v. Douglas, Trustee, 12 Bush 716, it was said a tax was not a mere debt due

from the citizen to the government which could be defeated by an ordinary plea of set-off.

In the note in 42 Am. St. Rep. 656 the editor says:

"A tax is generally regarded as a personal obligation. It is a charge, not merely upon the property assessed, but a personal charge against the taxpayer. Taxes are imposed on the person of the owner, notwithstanding property is resorted to for the purpose of ascertaining the amount thereof; and there is a personal obligation imposed upon the taxpayer to pay taxes independently of the value of the property assessed. Upon this principle it has been held, in a great many cases, that an action at law will lie to recover a tax, and that a personal judgment in such a case is proper. The imposing of a tax also imposes a duty upon the taxpayer, and it is wholly immaterial to consider whether the tax is a debt in the sense of a money obligation existing by contract. The government has the same right to enforce a duty as a debt, and may enforce it in the same way."

In support of this view the editor cites decisions from many jurisdictions, including Greer v. City of Covington, 83 Ky. 410.

Section 4020 of the Kentucky Statutes makes all real and personal estates, within the state, of every corporation organized under the laws of this state, liable to taxation, unless it be exempted from taxation by the Constitution.

Section 4021 further provides, in part, as follows:

"The Commonwealth, and each county, incorporated city, town or taxing district, shall have a lien on the property assessed for the taxes due them respectively (for five years) which shall not be defeated by gift, devise, sale, alienation, or any means whatever, unless the gift, devise, sale or alienation shall have been made for more than five years before the institution of proceedings to enforce the lien, and nothing shall be exempt from levy and sale for taxes and cost incident to the sale."

The succeeding sections, including sections 4149 and 4169 above referred to, provide for the levy and collection of the tax; but none of them, in express terms, imposes a personal liability upon the taxpayer. But we do not think the decision of this case calls for a determination of that question; it is to be decided upon a different principle.

That principle is that Martin is personally liable for the tax because he, as a stockholder in the Curry, Brown & Snyder corporation, appropriated all of its assets to his own use with the intention, admitted by the demurrer, of evading the payment of the corporation's debts. This view of the case is supported by Gratz v. Redd, 4 B. Mon. 178, and Grant, Assignee v. Southern Contract Co., 104 Ky. 788, wherein it was held a corporation could not distribute its assets as dividends among its stockholders to the detriment of its creditors, and, if it should do so, the stockholders will be required to pay back the dividends so received, for the purpose of paying the debts of the corporation.

Those cases, like all cases of that class, proceed upon the principle that a corporation cannot distribute its assets among its stockholders, by dividends or otherwise, to the prejudice of its creditors; that the stockholders are the real debtors, and that since the property of the corporation is liable for its debts, these voluntary distributions can be recovered from the stockholders who were never entitled to them as against the creditors of the corporation.

In our opinion this principle is applicable to this case, since all the property of the corporation has been distributed to Martin the stockholder without consideration, leaving nothing for the payment of the corporation's obligations.

The name given to these voluntary payments of the corporation to its stockholders is immaterial; it is of no importance that they are regularly declared and paid as dividends, or are merely taken and used by the stockholders without giving any consideration to the corporation. The broad principle that the stockholders are entitled to nothing until after the debts of the corporation are paid, will be applied regardless of the form the transaction may take.

To the extent, therefore, that may be necessary for the payment of the tax sued for, Martin should return to the corporation the property so received by him, or its value, and the personal judgment against him was proper.

Judgment affirmed.